IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WILLIAM B. HOFFMAN,

        Plaintiff,

v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.

CV 04-1313-CO
FINDINGS AND RECOMMENDATION

COONEY, Magistrate Judge:

## **INTRODUCTION**

Plaintiff brings this action for judicial review of a final decision of the Commissioner of Social Security denying his application for disability insurance benefits (DIB) under Title II of the Social

Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). The Commissioner's decision should be affirmed.

## BACKGROUND

In March 2000, Plaintiff filed an application for DIB alleging disability since March 6, 1997 due to bipolar disorder and problems with his shoulders, back, and feet. Tr. 152-154, 180, 189, 216. Plaintiff must show that he was disabled on or before his date last insured, September 30, 1998. 20 C.F.R. §§ 404.131, 404.315-21; Tr. 124. The Commissioner denied Plaintiff's application initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge (ALJ). Tr. 125-128, 132-136.

On February 20, 2002, the ALJ held a hearing. Plaintiff, represented by counsel, testified at the hearing, as did Plaintiff's friend Tim Anderson and vocational expert Richard J. Ross. Tr. 72-122, 559-607. On April 11, 2002, the ALJ issued a decision finding Plaintiff was not disabled prior to September 30, 1998. Tr. 12-23, 124. Plaintiff requested administrative review of the decision, but the Appeals Council declined review. Tr. 6-7.

On November 20, 2002, Plaintiff filed a complaint for judicial review. On May 8, 2003, the district court entered a judgment for Plaintiff pursuant to Defendant's offer of judgment. The court remanded the case for further administrative proceedings and instructed the ALJ to consider the severity of Plaintiff's mental impairments and any functional limitations they caused, and Plaintiff's credibility. Tr. 467a. On July 23, 2003, the Appeals Council remanded the case to an ALJ. Tr. 471-472.

On April 1, 2004, the ALJ held another hearing and took further testimony from plaintiff, represented by counsel. Tr. 453-465. On July 13, 2004, the ALJ issued another decision finding

Plaintiff not disabled prior to September 30, 1998. Tr. 453-465. This decision became the Commissioner's final decision after remand. 20 C.F.R. § 404.984.

Plaintiff was born in 1939. Tr. 152. Plaintiff was 57 years old when he allegedly became disabled, and he was 59 years old on his date last insured. He completed two years of college and had past relevant work experience as a real estate broker and perishable freight broker, both sedentary and skilled occupations. Tr. 186, 601. The record indicates that plaintiff worked as a real estate broker through the February 2002 hearing. Tr. 380, 574.

## DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled within the meaning of the Act. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. Each step is potentially dispositive.

At step one the Commissioner will determine that the claimant is not disabled if he is engaged in substantial gainful activity. Yuckert, 482 U.S. at 140; 20 C.F.R. § 404.1520(b). The ALJ found that Plaintiff had not engaged in substantial gainful activity from his alleged onset date to his date last insured. Tr. 458.

At step two the Commissioner will find the claimant not disabled if he has no medically determinable impairment that is "severe" within the meaning of the Act. Yuckert, 482 U.S. at 140-

41; 20 C.F.R. § 404.1520©). The ALJ found that Plaintiff's status-post rotator cuff tear and degenerative arthritis of his right shoulder, with impingement syndrome, and his degenerative lumbar disc disease and herniated disc were severe impairments and that his mental impairment was non-severe. Tr. 458-460, 464.

At step three the Commissioner will find the claimant disabled if his impairments meet or equal the criteria for "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(d). The criteria for these listed impairments, also called Listings, are enumerated in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments"). The ALJ found that Plaintiff's impairments did not meet or equal the requirements of a listed impairment. Tr. 458, 464.

If the adjudication proceeds beyond step three, the Commissioner must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis, despite the limitations imposed by his impairments. 20 C.F.R. § 404.1520(e), 404.1545; Social Security Ruling (SSR) 96-8p. The ALJ found that, as of September 30, 1998, the Plaintiff had the residual functional capacity for sedentary work. The ALJ found that he had limited capacity to push or pull with his right arm and could occasionally climb or stoop. Tr. 463-464. The ALJ found Plaintiff had no mental limitations. Tr. 463.

At step four the Commissioner will find the claimant not disabled if he retains the RFC to perform work he has done in the past. 20 C.F.R. § 404.1520(e). The ALJ found that Plaintiff could perform his past relevant work as a real estate broker or freight broker on or before his date last insured and was therefore not disabled. Tr. 463-465.

If the adjudication reaches step five, the Commissioner must determine whether the claimant can perform other work that exists in the national economy. Yuckert, 482 U.S. at 141-42; 20 C.F.R. § 404.1520(f). Here the burden shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can do. Yuckert, 482 U.S. at 141-42; Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999). If the Commissioner meets this burden, then the claimant is not disabled. 20 C.F.R. § 404.1566. The ALJ found Plaintiff was not disabled at step four and did not proceed to step five.

## DISCUSSION

Plaintiff contends that the ALJ: 1) erred by finding that Plaintiff's mental impairments were not severe; 2) erred by ignoring the physical capacity assessment from the consultative examiner; 3) erred by failing to reassess the credibility of Plaintiff's testimony and by failing to follow the mandates of SSR 96-7p; 4) improperly discounted Mr. Anderson's testimony; 5) erred by failing to follow the mandates of SSR 96-8p when formulating Plaintiff's RFC; 6) erred by finding Plaintiff could perform his past relevant work without performing a functional analysis of his past jobs as required by SSR 82-62; and 7) erred by relying on the vocational expert's testimony when the hypothetical question to the vocational expert was deficient.

### I. PLAINTIFF'S MENTAL IMPAIRMENTS

Plaintiff contends that the ALJ erred by finding Plaintiff's mental impairments non-severe. Plaintiff contends the ALJ failed to properly assess all the evidence and failed to fully develop the record with regard to Plaintiff's mental impairments. Plaintiff argues that the ALJ minimized evidence of Plaintiff's mental impairments citing to records from Dr. Quan, Dr. Crosson, and Dr. Wong-Ngan.

Plaintiff argues that the ALJ should have further developed the record regarding Plaintiff's mental impairments and that the ALJ failed to the combined effects of the impairments.

Plaintiff has the burden of establishing that her impairment is severe. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984). An impairment is severe when it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520©). The fact that a claimant has been diagnosed with a condition, by itself, does not establish that the impairment is severe. Young v. Sullivan, 911 F.2d 180, 183-184 (9th Cir. 1990). Plaintiff also has the burden of establishing all the requisite medical findings to show that the claimant meets or equals a listing. See Bowen v. Yuckert, 482 U.S. 137, 146 & n. 5 (1987).

The ALJ noted that in about 1990, Plaintiff was having domestic difficulties with his spouse, and the Plaintiff's attorney had him see a psychologist. Plaintiff reported that, in order to reduce his alimony payments, he attempted to demonstrate that he did not have the ability to make as much of an income as in the past. He underwent neuropsychological testing, and "one psychologist thought he might be faking". Tr. 378, 459.

The ALJ reviewed a 1991 report by Dr. Arlen Quan, M.D.. Tr. 459. Dr. Quan concluded that Plaintiff had a hypomanic personality and that he questionably had bipolar disorder. Tr. 401-403, 459. Dr. Quan's mental status examination showed that Plaintiff had no memory defects, his cognitive functioning was intact, and he had high average intellectual abilities. Tr. 402, 459. At the time Plaintiff was only taking medication for his stomach. Dr. Quan wanted to prescribe Stelazine, a tranquilizer Plaintiff reportedly had taken in the past, but Plaintiff did not want to take any antidepressants. Tr. 402-403. The ALJ noted that Dr. Quan did not assess any particular limitations and found that Dr. Quan's observations during the mental status examination suggested that Plaintiff

did not have any significant intellectual limitations. Tr. 459. The ALJ also reviewed Dr. Quan's 1997 letter in which Dr. Quan opined that Plaintiff seemed to tolerate his financial pressures and marital troubles better as long as took adequate Lithium. Tr. 459, 500. The ALJ found that Dr. Quan's reports were equivocal and showed that Plaintiff's "situational domestic conflicts were at the heart of these problems." Tr. 459.

The ALJ reviewed the August 2000 examination by Dr. John Crossen, Ph.D., and found that Dr. Crossen opined that Plaintiff's mental status functioning was intact, and the Plaintiff described a full range of daily living activities to Dr. Crossen. Tr. 459, 370. Dr. Crossen found that although Plaintiff had a history of bipolar disorder, that "he has not been symptomatic in many years" and that given his reported history, it was questionable whether he ever meet the diagnostic criteria for the disorder. Tr. 370. Dr. Crossen diagnosed depression, and assigned Plaintiff a Global Assessment of Function (GAF) score of 80. Tr. 371. The ALJ noted that the GAF score reflected "a level that is consistent with only minor limitations and not a severe mental condition. This report does not suggest severe impairment, either at the time it was made or during the relevant period at issue." Tr. 460.

The ALJ reviewed the psychological evaluation performed by Dr. Julia Wong-Ngan in January 2001. Tr. 377-386, 460. Dr. Wong-Ngan "thought that the claimant's earlier examinations in 1991 were unclear and questionable, in light of his use of medical findings as an armament in litigation at the time." Tr. 384, 460. She also found that it was "difficult to pinpoint when his mental problems began." Tr. 384. Dr. Wong-Ngan found that Plaintiff's depression and mood problems were not "significantly debilitating." Tr. 385. The ALJ did not give this report much weight with respect to the Plaintiff's condition at the time he was last insured, finding that "the level of equivocation on [the

7 - FINDINGS AND RECOMMENDATION

part of the doctor] . . . renders her report a bit uncertain with respect to the time period at issue." Tr. 460.

Dr. Wong-Ngan opined that Plaintiff's cognitive limitations could contribute to work performance problems, and that Plaintiff was moderately impaired by his cognitive and personality problems. Tr. 385. She assigned a GAF score of 55. Tr. 386. The ALJ noted that the problems Dr. Wong-Ngan found with Plaintiff's memory and attention were not present in earlier examinations, suggesting that the Plaintiff's condition may have worsened after the date his insured status expired. Tr. 460.

Plaintiff has not established by medical evidence that his mental impairments were severe prior to his date last on insured. There is substantial evidence to support the ALJ's finding that these impairments were not severe before that time, and the ALJ's opinion contains a through discussion of this evidence. Tr. 459-463. The ALJ reviewed the medical reports and records from Dr. Quan and Dr. Crossen and properly concluded that these reports and records demonstrated that Plaintiff's mental impairments were not severe prior to his last date of insured and that any mental impairments did not cause any limitations. Tr. 459-463.

In addition, the ALJ determination is supported by the opinion of consulting physician Dr. Paul Rethinger. Ph.D.. Tr. 254, 463. Dr. Rethinger found that there was insufficient evidence to support that Plaintiff suffered from a severe impairment on or before his last date insured. Tr. 254. The ALJ properly discounted medical opinions regarding plaintiff's condition after his last date of insured as these records and opinions were not relevant to the decision. Tr. 460-462.

There is no evidence that Plaintiff's mental impairments exacerbated his other conditions. Plaintiff did not present evidence that his mental impairments limited his functioning or his ability to

8 - FINDINGS AND RECOMMENDATION

work prior to his last date of insured. The ALJ properly found that Plaintiff's mental impairments were not severe. See Burch v. Barnhart, 400 F.3d 676, 682-683 (9th Cir. 2005).

The court also finds that the ALJ did not fail to fully develop the record or to call on a medial expert as there was sufficient evidence before the ALJ for him to determine the severity of Plaintiff's mental limitations prior to Plaintiff's last date of insured. See Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004).

The ALJ properly found that Plaintiff's conditions in combination did not meet or equal any listing. The ALJ cited to medical evidence in the record to support this finding. Tr. 459-463. Plaintiff did not present any evidence demonstrating that his mental impairments in combination with any of his other impairments or any combination of his impairments met or equaled any listing. See Burch, 400 F.3d at 682-683.

## II. MEDICAL OPINIONS

Plaintiff contends that the ALJ erred by totally ignoring the physical capacity assessment from the Commissioner's own consultative examiner and rejecting the consistent opinions of a treating physician.

The ALJ is responsible for resolving conflicts and ambiguities in medical evidence. See Batson v. Commissioner of SSA, 359 F.3d 1190, 1195 (9th Cir. 2004). The ALJ must provide clear and convincing reasons, supported by substantial evidence in the record, for rejecting the uncontradicted opinion of a claimant's treating physician. See Morgan v. Commissioner of SSA, 169 F.3d 595, 600 (9th Cir. 1999). If a treating physician's opinion is contradicted by another doctor, the ALJ may reject it by providing specific, legitimate reasons supported by substantial evidence in the record. Id. at 600-601. The opinions of non-treating or non-examining physicians may serve as

substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record. Id. at 600.

The ALJ is not bound by a physician's opinion on the ultimate issue of disability. Id. at 600; See Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir.), cert. denied, 531 U.S. 1038 (2000). This issue is reserved to the ALJ. See 20 C.F.R. § 404.1527(e); SSR 96-5p at *2.

The ALJ incorporated his review and analysis of the evidence submitted with respect to the first hearing. The ALJ found that Plaintiff's physical impairments, including his right shoulder injury with recurring impingement syndrome, lumbar degenerative disc disease, and left L4-5 herniation, were throughly reviewed in the prior decision, and that there was nothing before the ALJ that would change his earlier conclusions. Tr. 459. The ALJ specifically cited to Dr. Ogisu's opinion in making this statement. Tr. 459. The ALJ also considered Dr. Ogisu's opinion in his earlier decision. Tr. 19. Dr. Ogisu opined that Plaintiff's allegations that he could continuously sit for one hour, stand for 10 to 12 minutes, walk for 45 minutes, and lift up to 10 pounds were consistent with clinical findings. Tr. 374, 376. The court finds that the ALJ's assessment that Plaintiff could perform sedentary work was consistent with the August 2000 opinion of Dr. Tatsuro Ogisu, M.D.. Tr. 463; SSR 83-10.

Plaintiff contends that the ALJ erred by rejecting the functional assessment from Dr. Cameron C. Bangs, M.D.. (Tr. 389-394). Dr. Bangs opined that Plaintiff could walk four blocks, stand and walk less than 2 hours in an eight hour work day, sit less than eight hours in a normal eight hour work day, sit for 90 minutes before changing position, stand for 30 minutes before changing position, walk for forty five minutes, occasionally twist, stoop/bend, crouch, climb stairs, and climb ladders, and occasionally lift between 0 to 50 pounds. Tr. 391-393. Dr. Bangs also opined that Plaintiff could

not perform regular and continuous work activity, that Plaintiff's condition would constantly interfere with concentration and that Plaintiff could not perform even low stress jobs. Tr. 390-391, 400.

The ALJ rejected Dr. Bangs's opinion, because: Dr. Bangs did not specify any particulars as the basis of his assessment; Dr. Bangs's evaluation was a check box form unsupported by clinical findings; Dr. Bangs did not specify when Plaintiff's limitations began; Dr. Bangs's assessment is inconsistent with other specific medical records in the file, which show that the Plaintiff had good levels of concentration during the time at issue and he could manage stress; Dr. Bangs's assessment that Plaintiff was disabled since 1991 was inconsistent with Dr. Quan's 1991 examination, which showed that Plaintiff's mental functioning was intact; Dr. Bangs did not treat Plaintiff during the relevant time period; the limitations reported were not supported by competent medical evidence; Dr. Bangs; and the Plaintiff worked for many years after 1991, when Dr. Bangs opined that Plaintiff's disability began. Tr. 20, 461. The court finds that the ALJ gave specific, legitimate reasons supported by substantial evidence for rejecting Dr. Bangs's opinion. The ALJ may properly reject an opinion that is conclusory and is unsupported by clinical findings. See Batson, 359 F.3d at 1195. The court also finds that the ALJ was not required to re-contact Dr. Bangs, as there was sufficient evidence in the record for the ALJ to determine the Plaintiff's disability status as of his last insured date. See Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002).

### III. CREDIBILITY DETERMINATIONS

Plaintiff contends the ALJ erred by failing to reassess Plaintiff's credibility and by failing to follow the mandates of SSR 96-7P for assessing Plaintiff's credibility. Plaintiff also contends that ALJ improperly discounted the testimony of Mr. Anderson.

The ALJ may discredit a claimant's testimony regarding the severity of symptoms by providing clear and convincing reasons for doing so. Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). In assessing a claimant's credibility, the ALJ may consider: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning symptoms, and other testimony by the clamant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment; (3) the claimant's daily activities; (4) the objective medical evidence; (5) the location, duration, frequency, and intensity of symptoms; (6) precipitating and aggravating factors; (7) the type, dosage, effectiveness, and side effects of any medication; and (8) treatment other than medication. See Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ may also use first-hand observations as one factor among several in the general credibility evaluation. See Morgan v. Commissioner of SSA, 169 F.3d 595, 599-600 (9th Cir. 1999).

At the first hearing, Plaintiff testified that:

He injured his shoulder after September of 1998 while up on a 21 foot ladder. His right shoulder has been giving him problems since March of 1997, including "shaking" and "burning". Tr. 567. Since March of 1997, his right shoulder has caused difficulties with his ability to reach and shift gears on his truck. It also causes him continual pain. Tr. 568. Since March of 1997, because of his back, he cannot sit for more than 10 to 30 minutes, he cannot stoop, he can only stand for 10 minutes at a time, and he can only walk three blocks. Tr. 569. In March of 1997, he also had problems with his feet which limited his ability "to get around and do things", to walk, and to sit. Tr. 570. He also experienced pain in his knees a couple times a week, and the pain would last 20 to 30 minutes. Tr. 571.

From March 1997 through September of 1998, he experienced depression. Tr. 571. In March of 1997, his wife left him and he was unable to function. He would sit at his desk for 12 or 14 hours and accomplish nothing. Tr. 572. He has problems with concentration. Tr. 573. At the time of the hearing, he was about to close a real estate sale. Tr. 574.

He gets up five or six times a night to urinate and move from his bedroom to his recliner. He can only sleep on his left side. He feels "druggy" when he gets up in the morning. After four o'clock in the afternoon his body starts to hurt, and in the evening he loses his vocabulary. Tr. 575. He has tingling in his left upper leg. Tr. 576.

Because he is over weight he has trouble with stairs. Tr. 577. From March of 1997 to September of 1998, he would take one 20 minute rest period during day. Tr. 577-578. During this same period he had a woman who he hired part-time to help with household chores, but he was "pretty handy at home". After March of 1997, he gave up playing polo and his horses and cattle. Tr. 578.

He can carry less than five pounds with his right arm and ten pounds with his left. Between March of 1997 and September of 1998 he had more bad days then good days. Tr. 579. On a good day he could be on his feet for an hour and half as long as he was moving. Tr. 579-580. On a bad day he could only be on his feet for five minutes without taking a break. Tr. 580. He also had to elevate his legs and feet twice during the day for 20 minutes and usually in the evening for 45 minutes. Tr. 580-581. He cannot crouch, and his reaching is limited. Tr. 581. He also has difficulty buttoning buttons because of his thumb. He can push, but he cannot pull. Tr. 582.

During the relevant time period his pain level on a scale of 1 to 10 ranged from a 2 at its slowest to a 6 or 7 at its highest. Tr. 583-584. When his pain was at its highest he could work through it and fix a meal. His pain was at its highest level about 10 percent of the time. Tr. 584. The only medication he was taking during that period was 300 milligrams of Lithium every four hours. Tr. 585.

At the time of the hearing, he still had an office in his home. He also needed an office assistant. He had a real estate deal that was in escrow and was set to close on March 8. Tr. 586. He was still working. Tr. 590.

At the second hearing, Plaintiff testified that:

During the six months before March of 1997, he had problems controlling his anger and he would scream at and use bad with people on the telephone. Tr. 612-613. This happened five times a day and lasted about 10 or 15 minutes. This affected his ability to do business because the people he screamed at would not want to see him or hear from him again. Tr. 613. He also had the same problem for the past fifteen years. Tr. 614.

The ALJ found that the Plaintiff's statements concerning his impairments and the nature and extent of his limitations were not entirely credible in light of information contained in the medical reports and other evidence in the record. Tr. 459. The ALJ reviewed the medical reports, making assessments regarding Plaintiff's credibility and claims throughout the discussion. Tr. 459-462.

The ALJ made the following observations:

One psychologist that examined Plaintiff in 1990 "thought the claimant was faking". Plaintiff may have used his visit to a psychologist as a "maneuver to reduce his potential alimony liability". Although Plaintiff had spells of violence or anger with his new wife in 1997, Plaintiff was treated

with Lithium and went through counseling and he was "doing pretty well". It appeared that Plaintiff's "situational domestic conflicts were the heart of [Plaintiff's mental difficulties]". When Plaintiff was seen in 1991 he had no memory defects and his cognitive functioning was intact. Plaintiff did not demonstrate any significant intellectual limitations. Tr. 459.

In August 2000 Plaintiff was examined by Dr. Crossen and Plaintiff's mental functioning was intact and he described a full range of daily living activities. Tr. 459. Although Plaintiff reported a history of arguments and slamming his fist, he also reported that he had not done so for five years, which the ALJ found suggested "no particular intense anger difficulty during the relevant time period." Tr. 459-460. Dr. Crossen opined that Plaintiff's bipolar diagnosis was questionable, and that Plaintiff had been asymptomatic for many years. Dr. Crossen assessed a GAF score of 80, which was consistent with only minor limitations and did not suggest a severe impairment at the time it was made or during the relevant time period. Tr. 460.

In January of 2001, Plaintiff reported to Dr. Wong-Ngan that he had a history of anger problems, but that Lithium was very successful in controlling them. The report stated that Plaintiff "was without symptoms and considered himself a 7-8 on a 1-10 "happy" scale. Dr. Wong-Ngan opined that Plaintiff's depression or mood problems were not particularly debilitating. Plaintiff's memory and attention difficulties noted by Dr. Wong-Ngan were "not present at his earlier examinations (exhibits 6F:1-3; 11F), suggesting that the claimant may have worsened after the date that his insured status expired." Tr. 460.

Plaintiff told Dr. Crossen that he was active with the mounted sheriff's posse, he prepared meals, managed all his personal care, took care of pets, made many contacts by telephone and personal visits to others, went shopping, actively investigated potential investment properties, read

various periodicals, and did a great deal of planning. The ALJ found that these activities were typical of an active business person and suggested that Plaintiff did not have significant psychiatric difficulties on or before the date last insured. The Plaintiff does not consider himself unable to work and he is continually looking for land and making contacts. Plaintiff calls realtors as much as five times a day. Plaintiff's reports suggest that his loss of business is due to a lack of qualified employees rather than a medical problem. From 1997-1999, Plaintiff's tax returns show that he was in business and deducted significant amounts of money for business expenses. Tr. 462.

The ALJ gave clear and convincing reasons, supported by substantial evidence for rejecting Plaintiff's limitations. The ALJ complied with the remand order and properly evaluated Plaintiff's credibility. The ALJ also complied with SSR 96-7p.

At the first hearing, Plaintiff's friend, Tim Anderson, testified as follows:

He knew Plaintiff through social connections and acquaintanceship over the years. He had also done a few business transactions with him. During the period in question, Mr. Anderson saw Plaintiff three or four times a month, and talked to him on the phone once a week. During that period of time, he observed that Plaintiff had trouble walking; he would shuffle his feet and could only walk a block and a half without resting. Tr. 592. He also observed that Plaintiff had difficulty reaching over his head, bending down and picking anything up, and limitations with his reach pattern. Plaintiff also seemed like he was in pain about seventy to seventy five percent of the time. Plaintiff would get worn out after 45 minutes of cleaning up shrubbery around his house, and he would have to rest for the day. Tr. 593.

During that period, Mr. Anderson believed Plaintiff's pace was forty percent of normal. He also observed that Plaintiff became very volatile in dealing with people or being around people. He

would anger quickly, make derogatory comments, and had difficulty communicating. Plaintiff was irritable most of the time, and he would raise his voice to people and use bad language. Plaintiff also had crying spells. Tr. 594. He also observed that Plaintiff had problems with memory and concentration. Tr. 595. Mr. Anderson attributed 80 percent of Plaintiff's problems to the loss of his wives and 20 percent to pain. Tr. 596.

The ALJ found that Mr. Anderson's testimony was credible only to the extent that it was supported by objective findings from acceptable medical sources. The ALJ found that the medical records did not support the level of dysfunction alleged by the Plaintiff. Tr. 19. The ALJ also found that Mr. Anderson's testimony was not clear as to dates and activities. Tr. 462.

The court finds that the ALJ gave germane reasons for finding Mr. Anderson's testimony not entirely credible.

## IV. STEP FOUR DETERMINATION

Plaintiff contends that the ALJ erred by failing to follow the requirements of SSR 96-8P when formulating Plaintiff's residual functional capacity (RFC) assessment. Plaintiff contends that ALJ failed to assess whether Plaintiff is capable of working on a regular and continuing basis of 8 hours a day, five days a week; the ALJ failed to explain the basis for his conclusions that Plaintiff retained the ability to perform sedentary work, the ALJ failed to perform a function by function analysis, the ALJ failed to address any limitations due to Plaintiff's depression or obesity, and the ALJ did not address whether Plaintiff's mental impairments are exacerbated by stress.

SSR 96-8P requires the RFC assessment to

"identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), ©), and (d) of 20 CFR 404.1545 and 416.945. . . . The RFC

17 - FINDINGS AND RECOMMENDATION

assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).

At the first hearing, the vocational expert described Plaintiff's past relevant work as a real estate broker and perishable freight broker as sedentary and skilled occupations. Tr. 115. In setting forth Plaintiff's RFC assessment, the ALJ adopted the opinion of consultative physician Robert McDonald, D.O.. Tr. 116, 268-273. Dr. McDonald's RFC assessment contains a function by function analysis of Plaintiff's physical abilities and explains what medical evidence was relied upon in making the determinations. The court finds that the ALJ properly relied upon Dr. McDonald's opinion when determining Plaintiff's RFC assessment and that such reliance complies with SSR 96-8P. The court also finds that the ALJ properly rejected Plaintiff's claims of mental impairments, and, therefore the ALJ did not have to include them in this RFC assessment. Plaintiff has failed to point to evidence that establishes Plaintiff's alleged obesity caused any limitations during the relevant time period. The court finds that the ALJ properly assessed Plaintiff's RFC.

In setting forth the hypothetical question the vocational expert, the ALJ adopted the RFC assessment set forth by consultative physician Robert McDonald, D.O.. Tr. 116, 268-273. Based on the hypothetical question, the vocational expert testified that Plaintiff could perform his past relevant jobs both as he performed them and as actually performed in the national economy. The court finds that the ALJ properly relied upon the testimony of the vocational expert in finding that Plaintiff could perform his past relevant work. The court also finds that the ALJ's hypothetical question contained the limitations that were supported by substantial evidence in the record and properly excluded the limitations the ALJ found were not supported by the record. See Osenbrock

v. Apfel, 240 F.3d 1157, 1163-1165 (9th Cir. 2001)(the ALJ is free to accept or reject restrictions that are not supported by substantial evidence).

## **RECOMMENDATION**

Based on the foregoing, the ALJ's determination was based on proper legal standards and supported by substantial evidence. The Commissioner's final decision should be affirmed and final judgment should be entered pursuant to sentence four of 42 USC § 405(g) dismissing this case with prejudice.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties have ten (10) days within which to file a response to the objections. Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this __17____ day of October, 2005.

_____/s/_____
John P. Cooney
United States Magistrate Judge